DEKLE, Justice.
The principal points on this appeal from a first degree murder conviction without recommendation of mercy were disposed of by blanket opinion with other cases in the opinion of Adkins, J., in Anderson, et al. v. State, filed September 8, 1972, 267 So.2d 8 (Fla. 1972). That holding dealt with the penalty phase in light of the U. S. Supreme Court case of Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), invalidating present death sentences; also our earlier Donaldson v. Sack, opinion filed July 17, 1972, 265 So.2d 499 (Fla. 1972).
Additionally, appellant’s Witherspoon[1] objections are rendered immaterial by Fur-man.
Remaining are defendant’s further contentions of (1) error for insufficiency of evidence to support a first degree murder conviction, and (2) an interchange by a prospective juror with the state attorney regarding the defendant’s right to remain silent. Taking the last of these contentions first, we find that a prospective juror interjected a statement regarding any defendant not testifying and in not “telling his own story”. The state attorney who was inquiring at the time responded, “That’s up to him [defendant], whether he does or not.”
In response to defendant’s objection the trial judge promptly instructed the venire on the law pertinent to the defendant’s right to remain silent. The able jurist then also inquired of all prospective jurors, both in the box and waiting to be called, as to their understanding and reaction on the point. They responded that they understood and accepted the proposition of law and would not be prejudiced by the earlier remarks. We find no error in this procedure. Denial of the motion for mistrial was proper.
*821 With regard to the facts in this cause, it will be seen that they- were tragically unnecessary and uncalled for. Defendant with his girlfriend began driving home in one of two trucks owned by him. Another friend, Richard Mitchell, and his girlfriend followed in defendant’s other truck. En-route Mitchell was in an accident with an automobile carrying four passengers, at a point when defendant had proceeded out of sight. When defendant realized that Mitchell was no longer following him, he turned his truck around and drove back in search of his friend and truck.
When defendant arrived at the accident scene some 10 minutes after the accident, Mitchell and the automobile driver were discussing settlement of damages in the accident. Defendant first spoke to the girl in Mitchell’s truck. She told him that “I thought maybe there was going to be a fight Or something, maybe.” Defendant then went over to the group and said, “What the hell’s going on ?” Mitchell told him there was nothing wrong but defendant went immediately to Mitchell’s truck for two shotguns defendant and Mitchell had there. Defendant’s girlfriend “told him not to bother with them.” “He didn’t say a thing. He walked off and went over to the truck and lifted the back of the seat” and got out the two shotguns. “One was already loaded.” Holding one in each arm, the defendant rejoined the group and pointed the guns at the passengers. Mitchell said, “ ‘There is no need of that,’ and about that time the gun had went off.”
A passenger testified that decedent was one of the passengers who was still in the car; that he got out and stretched his arms and when he “brought his hands down to rest,” the defendant raised the shotgun in his right hand and shot this passenger causing his death. (Mitchell stated the deceased was already out of the car.) Immediately after he shot, defendant said, “Don’t you go in your pocket”; then he left in- his truck.
Defendant submits that the only reasonable inference is that the deceased “was dropping his hands to his pocket and defendant shot at that time, likely in fear.” The witness testified:
“A. He was bringing his hands to rest a little below his pocket.
“Q. A little below his pocket?
“A. A little below his pocket. He was bringing them down to rest.”
Mitchell’s girlfriend witnessed the shooting from the truck and said defendant raised the gun up “as he was walking off” and that’s when the gun went off. She continued :
“Q. Had he said anything to the man?
“A. No. When he got to the truck, he asked me what was wrong with me, and I told him that he had shot that man.
“Q. What did he say?
“A. He just said, Oh, my God, and told me to move over.” (T 229-230.)
The jury had a right to believe that version which supports the first degree murder charge; we cannot substitute our judgment for theirs. The evidence is sufficient to support the jury’s verdict which we must uphold. The verdict and judgment, as heretofore modified to life imprisonment, are accordingly
Affirmed.
ROBERTS, C. J., and ERVIN, CARLTON, ADKINS, BOYD and McCAIN, JJ., concur.

. Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). See express reference by Mr. Justice Black-mun in Moore v. Illinois, 408 U.S. 786, 92 S.Ct. 2562, 2570-2571, 33 L.Ed.2d 706 (1972).